**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>David J. Glimcher; and<br>Stronger Together Limited Partnership,<br><br>　　　　Debtors.<br><br>David J. Glimcher;<br>Stronger Together Limited Partnership;<br>Jennings Strouss & Salmon, P.L.C.; and<br>Wright Tax Solutions, P.L.C.,<br><br>　　　　Appellants,<br><br>vs.<br><br>Brian J. Mullen, Chapter 7 Trustee,<br><br>　　　　Appellee. | No. CV-12-01692-PHX-FJM<br><br>**ORDER** |

This is a bankruptcy appeal in which we are asked to decide whether lawyers may pay their post-petition fees from pre-petition unearned retainer funds. We hold that they may not.

**I**

Debtor filed a voluntary Chapter 7 petition in the bankruptcy court on May 26, 2011, (the "Petition Date"). Before the Petition Date, Debtor retained Wright Tax Services, PLC ("Wright") as his accountant, and Jennings Strouss & Salmon, PLC ("JS&S") as his bankruptcy counsel. JS&S received a total of $100,000 from Debtor before the Petition Date

1  and $59,000 on that date, bringing the total retainer to $159,000 ("JS&S Retainer"). Wright
2  held a total of $55,000 from the Debtor before the Petition Date. Before filing the petition,
3  JS&S offset its retainer in the amount of $59,809.36 for work performed to that date, leaving
4  a balance of $99,190.64. Wright applied $30,000 to outstanding fees it was owed for pre-
5  petition services, leaving a balance of $25,000. After the Petition Date, JS&S and Wright
6  continued performing services and incurring fees and expenses on behalf of Debtor.

7  On October 1, 2011, the Trustee filed a motion seeking an order that JS&S turn over
8  all post-petition retainers and any pre-petition retainers that were not fully earned before the
9  Petition Date. The Trustee was willing to allow compensation to Wright for beneficial
10 accounting services provided through July 25, 2011. The bankruptcy court granted the
11 Trustee's motion, finding that the pre-petition retainers paid to JS&S and Wright "retained
12 their character as property of the estate, and neither JS&S nor Wright had any authority to
13 apply these pre-petition funds to pay for post-petition professional services rendered to the
14 individual Debtor, and not to the bankruptcy estate." In re David J. Glimcher, No. 2:11-BK-
15 15333-RJH, Opinion Re: Turnover of Retainers at 2 (May 8, 2012). The bankruptcy court
16 ordered JS&S and Wright to turn over all funds held in the respective retainer accounts as
17 of the Petition Date, less any amounts subsequently invoiced for pre-petition work that had
18 not been drawn or paid by the Petition Date.

19 JS&S filed this appeal on behalf of itself and Wright. However, in its Opening Brief
20 JS&S does not make any arguments on behalf of Wright. In its Reply Brief, JS&S argues
21 that the Trustee has the burden to demonstrate why Wright should be required to turn over
22 its retainer. However, on appeal, the party challenging the court's ruling bears the burden of
23 proof, one which has not been met here. See K.D. ex rel. C.L. v. Department of Educ.,
24 Hawaii, 665 F.3d 1110, 1117 (9th Cir. 2011).

**II**

Appellants contend that the bankruptcy court erroneously concluded that under Lamie
v. U.S. Trustee, 540 U.S. 526, 124 S. Ct. 1023 (2004), JS&S and Wright must turn over the

- 2 -

unearned portions of the pre-petition retainers because they were property of the bankruptcy estate. On appeal, we "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. Legal conclusions are reviewed *de novo*, but findings of fact will only be set aside if clearly erroneous. In re Alcala, 918 F.2d 99, 103 (9th Cir. 1990).

Appellants argue that Lamie "expressly carved out an advance payment 'retainer exception,'" which permits a debtor to pay his attorney reasonable compensation from a pre-petition retainer, even if it is estate property. Opening Brief at 8. But Lamie only acknowledged that 11 U.S.C. § 330(a)(1) does not prevent a debtor from engaging counsel before its bankruptcy filing and "paying reasonable compensation in advance to ensure that the filing is in order." 540 U.S. at 538, 124 S. Ct. at 1032. Fees earned pre-petition are charged against the debtor's property under 11 U.S.C. § 329, not the estate's property under § 330. In contrast, Lamie expressly holds that § 330 does not authorize compensation awards from bankruptcy estate funds for post-petition services provided by debtors' attorneys, unless the attorneys are employed by the trustee and approved by the court. Id. Here, it is undisputed that the Trustee did not employ JS&S, nor did the bankruptcy court approve post-petition compensation of debtors' attorneys. Accordingly, under Lamie, JS&S must turn over any portion of the JS&S Retainer not used for fees earned pre-petition.

### III

Appellants next argue that the bankruptcy court erred by characterizing the JS&S retainer as a "security retainer," which remains property of the estate and is subject to turn over. We "look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case." In re Pettit, 217 F.3d 1072, 1078 (9th Cir. 2000).

JS&S characterizes its retainer as an "advance fee deposit." Opening Brief at 13. The Comments to the Arizona Rules of Professional Conduct ("ARPC"), define an advance fee deposit as "a security deposit to insure the payment of fees when they are subsequently

- 3 -

earned, either on a flat fee or hourly fee basis." See ARPC, commentary, 1.5 ("Fees") at [7]. Accordingly, an attorney has a security interest, but no property interest in an advance fee until the fees are actually earned. Indeed, ARPC 1.15(c) directs attorneys to deposit into a client trust account legal fees and expenses that have been paid in advance, to be drawn on by the attorney only as fees are earned or expenses incurred. Moreover, ARPC 1.16(d) provides that an attorney must refund any advance payment of a fee that has not been earned. See also ARPC 1.5, commentary at [4] ("A lawyer may require advance payment of a fee, but is obliged to return any unearned portion."). Thus, as the bankruptcy court noted, in order for JS&S to claim a property interest in the JS&S Retainer it had to have earned the fees upon receipt, or for work performed.

Here, the JS&S retainer agreement does not describe an earned upon receipt retainer. Instead, the retainer agreement specifies that JS&S would draw on the retainer only as the time and services were expended and that any unearned portion of the retainer would be refunded. Appellants' Excerpts of the Record at 107. The agreement also provides that JS&S would seek additional advances "for future work to be undertaken." Id. These undisputed facts support the bankruptcy courts' conclusion that the JS&S Retainer was not earned on receipt, and thus the firm's property, but rather, an advance against future fees, which remained Debtor's property. Therefore, although JS&S had physical possession of the JS&S Retainer, it held only a security interest in the unearned portion of the retainer funds, as of the Petition Date. Appellants concede this. Opening Brief at 13.

The issue of whether a security interest is property of the bankruptcy estate is a question of federal law. In re Pettit, 217 F.3d at 1078. As the bankruptcy court noted, when a law firm holds only a security interest and physical possession, the property securing it remains property of the estate and therefore subject to turn over. See United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2309 (1983). Because JS&S held only a security interest in the unearned portions of the retainer, those funds remained property of the estate and were subject to turn over. We therefore conclude that the bankruptcy court did not err in requiring turn over of all unearned funds held in the JS&S retainer account as of

- 4 -

1 the Petition Date, less any amounts subsequently invoiced for pre-petition work that had not
2 been drawn or paid by the Petition Date.

### IV

We also reject appellants' argument that the bankruptcy court erred in granting relief the Trustee did not request.  The bankruptcy court has an independent responsibility to evaluate the propriety of professional fees and expenses requested, notwithstanding the absence of, or the compromise of, any objection to a pending fee application, or the affirmative consent of the Trustee. 11 U.S.C § 330(a)(3); see also Fed. R. Bankr. P. 2017 ("On motion . . . or on the court's own initiative, the court . . . may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney . . . is excessive.").

### V

Finally, appellants argue that the bankruptcy court's order contravenes public policy because it hinders a debtor's ability to hire competent counsel.  But the bankruptcy court's decision does not hinder a debtor's ability to hire competent counsel.  Under § 329 and Lamie, 124 S. Ct. at 1032, the debtor may engage counsel before a Chapter 7 filing and pay reasonable compensation for pre-petition services.  Even after filing, as acknowledged by appellants, debtors may find a third-party source to fund payments to counsel for post-petition services, or can fund those payments through its own post-petition income. Appellants Reply at 7.  Moreover, pursuant to Lamie, debtors may ask a trustee to employ counsel for post-petition services, and thereby ensure that estate funds can be used to compensate counsel. Thus, the statutory scheme fully protects a debtor's ability to employ counsel. In contrast, under appellants' theory, a debtor could fund his entire representation throughout a bankruptcy by depositing what would otherwise be bankruptcy estate funds with his lawyers.  That would turn bankruptcy on its head.

### VI

**IT IS ORDERED AFFIRMING** the bankruptcy court's order regarding turn over of

1 the JS&S and Wright retainers.

2    DATED this 19th day of November, 2012.

Frederick J. Martone
United States District Judge